OPINION OF THE COURT
Pam Jackman Brown, J.
Background
On November 1, 2011, the Appellate Division, Second Department, remitted this matter for a determination of the basic child support obligation, including the parties’ prorated contributions toward child care and unreimbursed health care expenses, in accordance with the Child Support Standards Act (CSSA). The case was transferred to this court for a hearing and determination.
The parties were married on August 18, 1990 and three children of the marriage, M.B. (date of birth 1995), N.B. (date of birth 1999) and N.B. (date of birth 2002), were born. Plaintiff commenced the instant matrimonial proceeding on June 27, 2007 with the filing of a summons with notice. Notably, plaintiff failed to file a verified complaint and defendant did not make a demand for same. A preliminary conference was held on November 2, 2007. On September 9, 2008, the parties proceeded to inquest and entered into an oral stipulation resolving the ancillary issues of the proceeding. The parties agreed to joint shared legal and residential custody of their minor children. Regarding child support, the parties agreed that upon defendant’s vacatur of the marital residence, plaintiff would pay defendant the sum of $2,100 per month, as his share of basic child support based upon the Court of Appeals’ determination of Bast v Rossoff (91 NY2d 723 [1998]), subject to a final review and determination by the trial court. They also agreed that plaintiff and defendant would pay 65% and 35% respectively, of the children’s unreimbursed medical, day care, day camp, religious school instruction and extracurricular activities, capped at $250 per month. They further agreed to waive maintenance. In addition, the parties agreed that plaintiff would pay to defendant a lump sum of $112,000 in exchange *426 for her portion of the marital residence, to divide the marital portion of their retirement benefits pursuant to Majauskas and appraise their respective interests in plaintiff’s law license and Master’s degree in social work.
In November 2008, defendant vacated the marital residence and moved to a rental apartment. Plaintiff continued living and paying the carrying charges in the marital residence. The joint shared parenting schedule continued. On January 26, 2009, the parties entered into a so-ordered stipulation modifying the oral stipulation, spread on the record on September 9, 2008. The parties agreed that commencing March 2009, plaintiff’s child support obligation would be $2,300 per month, “based upon a cap of his income from all sources at $110,000.00” (emphasis added). They agreed to share statutory add-ons 70% and 30%, respectively. Said stipulation further states that the parties entered into the stipulation based upon the parties’ equal shared time with the children. Regarding equitable distribution, defendant waived all interests in plaintiff’s law degree and law firm and plaintiff waived all interest in defendant’s law and Master’s degrees.
On or about July 6, 2009, prior to the signing of the judgment of divorce, plaintiff moved for an order modifying the terms of the stipulation of settlement regarding custody and child support. Specifically, plaintiff sought sole custody and an order directing defendant to pay child support in accordance with the CSSA. On or about July 21, 2009, defendant crossed-moved, also seeking sole custody and an order directing plaintiff to pay child support pursuant to the CSSA.
The judgment of divorce was granted March 19, 2010. It incorporated both the oral stipulation, spread on the record on September 9, 2008, and so-ordered stipulation, dated January 26, 2009, and directed plaintiff to pay the sum of $2,300 monthly as child support. Pursuant to the so-ordered stipulation, dated January 26, 2009, the judgment directed that the parties proportionately share “statutory add-ons” and unreimbursed medical expenses 70% and 30% respectively. The judgment further directed that the parties share nonstatutory addons, including day camp expenses until each child reaches 15 years of age, religious school instruction and extracurricular activities capped at $250 per month, proportionately, 65% by plaintiff and 35% by defendant. Although the parties previously agreed to joint legal and residential custody, the judgment held the issue of custody in abeyance pending the court’s *427 determination of the parties’ pending motions. The detailed parental access schedule continued until such time as the court determined the pending applications.
On or about May 17, 2010, defendant filed a notice of motion seeking vacatur of the child support and “add-on” provisions of the judgment of divorce and consideration of the child support and “add-on” provisions de novo. Defendant also sought an award of counsel fees to be determined in favor of defendant as part of a hearing and determination of child support. On or about June 10, 2010, plaintiff cross-moved for a money judgment for non-statutory and statutory add-ons owed by defendant and counsel fees related to the pending motions and appeal.
On September 27, 2010, the court denied both parties’ applications seeking sole custody. The court noted, “it remains in the children’s best interests for the parties to continue their shared, joint custodial arrangement.” The court denied the remaining applications, including defendant’s application seeking vacatur of the child support obligation and add-on provisions of the stipulation, de novo consideration of the child support obligation and add-on provisions and counsel fees. Although the court denied plaintiff’s application seeking a money judgment for add-on arrears, the court directed that defendant immediately commence payment of the non-statutory and statutory add-ons and to pay arrears in equal payments to plaintiff over the course of the next 12 months.
Defendant’s Appeals and Appellate Division Decisions
On or about April 1, 2010, defendant filed a notice of appeal with the Appellate Division, Second Department regarding the provisions of the judgment concerning basic child support and statutory add-ons for failure to comply with CSSA. On November 1, 2011, the Appellate Division held that the parties so-ordered stipulation, dated January 26, 2009, which was incorporated, but not merged, into the judgment of divorce, did not comply with the requirements of CSSA, as codified in Domestic Relations Law § 240 (1-b) (h) (see Bushlow v Bushlow, 89 AD3d 663 [2d Dept 2011]).
Specifically, the appellate court held that the stipulation, which was incorporated, but not merged, into the judgment of divorce, did not comply with the requirements of the CSSA. The Court further stated that the stipulation failed to recite that the parties were advised of the provisions of the CSSA and that the basic child support obligation provided for therein *428 would presumptively result in the correct amount of support to be awarded. The Court further held that because the parties’ prorated shares of child care expenses and future unreimbursed health expenses deviated from the CSSA guidelines, they were not calculated based upon the parties’ gross income. Thus, the Court opined that under the CSSA, the stipulation was required to contain additional recitals, including the amount that the basic child support obligation would have been under the CSSA.
The appellate court remitted the matter to the trial court for a determination of the basic child support obligation, including the parties’ prorated contributions toward child care and reasonable unreimbursed health care expenses in accordance with CSSA. In its remittal, the Court directed plaintiff to continue paying defendant child support in the sum of $2,300 per month and 70% of child care and unreimbursed medical expenses, with any overpayment to be credited against future payments after entry of the amended judgment or underpayment to be debited to him and included as arrears in the amended judgment.
On or about October 29, 2010, defendant filed a second notice of appeal with the Appellate Division, Second Department, regarding the order of the Supreme Court, Queens County, dated September 27, 2010. Specifically, defendant appealed the court’s denial of her application seeking de novo review and vacatur of the child support and statutory add-ons provisions of the stipulation of settlement and the order directing defendant to commence payment of her share of the statutory and non-statutory add-ons and arrears.
On November 1, 2011, the Appellate Division, Second Department, issued a determination regarding defendant’s second appeal (see Bushlow v Bushlow, 89 AD3d 665 [2d Dept 2011]). In light of the appellate court’s determination regarding the first appeal, it dismissed defendant’s contention regarding vacatur of the child support and statutory add-on provisions as academic. The appellate court held that because the child support and statutory add-on provisions of the stipulation were unenforceable, due to the failure to comply with the CSSA, the trial court should not have directed defendant to commence payment of her share of the statutory add-ons and to pay arrears related to them. The case was remitted for a recalculation of defendant’s arrears related to child care and reasonable unreimbursed health expenses after a determination of the basic child support obligation in accordance with CSSA.
*429 Trial Issues
The trial was held before this court on April 8, 2013, April 9, 2013, November 26, 2013 and March 18, 2014. Pursuant to the directives of the Appellate Division, Second Department, the issues for trial were a determination of the basic child support obligation, including the parties’ prorated contributions toward child care and reasonable unreimbursed health care expenses, in accordance with the CSSA, and a recalculation of the defendant’s arrears relating to child care and reasonable unreimbursed health care expenses.
Applicable Statutes and Case Law
Calculation of Basic Child Support
Domestic Relations Law § 240 (1-b) codifies the Child Support Standards Act. CSSA provides a numeric formula for calculating child support awards with a three-step method for calculating parties’ basic child support obligations.
The court must calculate each party’s annual income. According to Domestic Relations Law § 240 (1-b) (b) (5), income is defined as gross (total) income as should have been or should be reported in a party’s most recent federal tax return; investment income reduced by sums expended in connection with such investment, to the extent such income is not reported on the party’s tax return; and income or compensation voluntarily deferred and income received from workers’ compensation, disability benefits, unemployment insurance benefits, Social Security benefits, veteran benefits, pension and retirement benefits, fellowships and stipends and annuity payments. Domestic Relations Law § 240 (1-b) (b) (5) (iv) grants the court discretion to impute or attribute income from other resources as may be available to the parent, including, but not limited to non-income producing assets; meals, lodging, memberships, automobiles or other perquisites that are provided as part of compensation for employment to the extent that such perquisites constitute expenditures for personal use or which expenditures directly or indirectly confer personal economic benefits; fringe benefits provided as part of compensation for employment; and money, goods or services provided by relatives and friends.
Domestic Relations Law § 240 (1-b) (b) (5) (vii) provides that the following shall be deducted from income: unreimbursed employee business expenses except to the extent said expenses reduce personal expenditures, alimony or maintenance actually paid to a spouse not a party to the instant action pursuant *430 to court order or validly executed agreement; alimony or maintenance actually paid or to be paid to a spouse that is a party to the instant action pursuant to an existing court order or contained in the order to be entered by the court or pursuant to a validly executed written agreement; child support actually paid pursuant to a court order or written agreement on behalf of any child for whom the parent has a legal duty of support and who is not subject to the instant action; public assistance; supplemental security income; New York City or Yonkers income or earnings taxes actually paid; and Federal Insurance Contributions Act taxes actually paid.
The parties’ incomes are then combined to calculate the combined parental income. The parties combined parental income, up to $141,000 is multiplied by the applicable child support percentage. The resulting amount is the parties’ basic child support obligation, which shall be prorated in the same proportion as each parent’s income is to the combined parental income. Where the combined parental income exceeds $141,000, the court shall determine the amount of child support for the amount of the combined parental income which exceeds $141,000. The court is required to consider the factors enumerated in Domestic Relations Law § 240 (1-b) (f) and/or the applicable child support percentage.
The factors enumerated in Domestic Relations Law § 240 (1-b) (f) include: the financial resources of the parties and the child; the physical and emotional health of the child and his/ her special needs and aptitudes; the standard of living the child would have enjoyed had the marriage or household not been dissolved; the tax consequences to the parties; the non-monetary contributions that the parents will make toward the child’s care and well-being; the parents’ educational needs; a determination that the gross income of one parent is substantially less than the other parent’s gross income; the needs of the non-custodial parent’s children from whom the noncustodial parent is providing support but are not subject to the instant action and whose support is not deducted from the noncustodial parent’s income in determining income; expenses incurred by the non-custodial parent in exercising visitations; and any other factor the court determines relevant in each case.
Statutory Cap
After determining the combined parental income, as income is defined in Domestic Relations Law § 240 (1-b) (b) (4) and (5), *431 the court shall multiple the combined parental income up to “the amount set forth in paragraph (b) of subdivision two of section one hundred eleven-i of the social services law” (Domestic Relations Law § 240 [1-b] [c] [2]). This amount is colloquially known as the “statutory cap” or “statutory ceiling.” At commencement of this proceeding in 2007, the statutory cap was $80,000. At the time of the so-ordered stipulation in 2009, the statutory cap remained at $80,000. Effective 2010, the statutory cap was increased to $130,000 pursuant to the Child Support Modernization Act. In 2012 and 2014 the statutory cap was increased to $136,000 and $141,000, respectively. At the commencement of trial before this court, the statutory cap was $136,000. As of the last date of trial, the statutory cap was $141,000.
Unreimbursed Health Expenses
Domestic Relations Law § 240 (1-b) (c) (5) states that the court shall determine parties’ obligations to provide health insurance benefits for unemancipated children of the marriage. Domestic Relations Law § 240 (1-b) (c) (5) (ii) provides that where the court finds that health insurance benefits are available, the cost of providing health insurance benefits shall be prorated between the parties in the same proportion as each parent’s income is to the combined parental income. If the custodial parent is directed to provide such benefits, then the noncustodial parent’s pro rata share of such costs shall be added to his/her basic child support obligation. If the noncustodial parent is directed to provide such benefits, the custodial parent’s pro rata share of such costs shall be deducted from the basic child support obligation.
Reasonable Child Care Expenses
Domestic Relations Law § 240 (1-b) (c) (4) provides that where the custodial parent is working or receiving elementary, secondary, higher education or vocational training which the court determines will lead to employment and the custodial parent incurs child care expenses as a result of such employment, education or training, then the court shall determine reasonable child care expenses. Where such reasonable child care expenses are incurred, the court shall prorate such expenses in the same proportion as each parent’s income is to the combined parental income. Each parent’s pro rata share of the child care expenses shall be separately stated and added to the basic child support obligation.
*432 Retroactivity
Domestic Relations Law § 240 (1) (j) provides that child support orders shall be effective as of the date of application. Any retroactive amount of child support arrears shall be considered as airears/past due support and shall be paid in one lump sum or periodic sums, as the court directs, taking into account any amount of temporary support which has been paid (see also Domestic Relations Law § 236 [B] [7]). The Appellate Division, Second Department, has directed that child support payments be awarded retroactive to the date of an application seeking pendente lite child support (Hymowitz v Hymowitz, 119 AD3d 736, 743 [2014]).
Plaintiff commenced this proceeding with a summons with notice on June 27, 2007. Neither party filed or demanded sworn pleadings. A review of the court file indicates that neither party filed an application seeking pendente lite relief. Pursuant to the preliminary conference stipulation/order, dated November 2, 2007, the parties agreed to place the marital residence on the market for sale. While the parties resided in the marital residence, defendant agreed to pay to plaintiff the sum of $1,000 per month. Plaintiff agreed to pay the real estate taxes, mortgage, home equity line of credit, reasonable utilities, insurance, unreimbursed medical for children, and household maintenance. Plaintiff further agreed to pay 83% of actual reasonable grocery expenses for family. Defendant agreed to pay 17% of said expenses. The parties anticipated that food expenses would not exceed $750 per month. Other expenses for the children not included in the order and paid by either party were to be reallocated upon trial or resolution of the matter. The first child support determination made in this proceeding was pursuant to the parties’ oral stipulation, spread on the record on September 9, 2008, wherein plaintiff agreed to pay the sum of $2,100 monthly, as basic child support. Defendant continued to reside in the marital residence until November 2008 when she vacated. Considering the lack of sworn pleadings or pendente lite applications and the parties’ agreement regarding household expenses, this court determines that the date of defendant’s application seeking child support is September 9, 2008. There is no evidence to dispute this date. Therefore, plaintiff’s child support obligation shall be deemed retroactive to September 9, 2008.
Courts have held, “where, as here, the court does not render a child support determination until some time after the commencement of the action, the amount of retroactive child sup *433 port should be based on the parties’ income for each year that child support is awarded” (Wilson v Wilson, 226 AD2d 711, 712 [2d Dept 1996]; see also Matter of Kalapodas v Kalapodas, 305 AD2d 1047 [4th Dept 2003]; Diamond v Diamond, 11 AD3d 289 [1st Dept 2004]; Gezelter v Shoshani, 283 AD2d 455 [2d Dept 2001]). Thus, this court will calculate and determine plaintiff’s child support obligation based on the parties’ incomes for each of the following years: 2008, 2009, 2010, 2011, 2012, 2013 and 2014. The final order will be effective as of 2014.
Credible and Relevant Testimony
Three witnesses testified: the parties and defendant’s current husband.
Family Background
At the time of trial, both parties have remarried and continue to share joint legal and residential custody of the children. Plaintiff continues to pay $2,300 to defendant as basic child support pursuant to the order of the appellate court. The children continue to spend equal time with both parents in accordance with the parental access schedule. The parties’ oldest child graduated from high school and is currently attending college out-of-state. Plaintiff pays for the child’s college expenses, after deductions for financial aid and scholarships without financial assistance from defendant. Plaintiff remained in the marital residence for five years after defendant vacated and subsequently sold it. Plaintiff remained in Forest Hills, near the children’s school, with his new wife. Defendant vacated the marital residence and moved to a rental apartment. She also remained in Forest Hills, near the children’s schools. Defendant also shares a residence with her new husband and their child in Pennsylvania.
Plaintiff continues to be employed as an attorney at his father’s law firm, where he is a partner. Defendant, who earned her law degree during the marriage, is currently employed as a social worker for a nonprofit family service agency. Defendant has a law degree and a Master’s degree in social work. She was employed for three years during the marriage as an attorney. Defendant has not earned a salary from the full time practice of law since approximately 1995.
Parties’ Lifestyle
The testimony of the parties indicates that the family enjoyed a middle-class lifestyle during the marriage. They pooled their incomes to meet the household expenses. The 2007 joint tax *434 returns reflect incomes of $218,625 and $18,529, respectively. Plaintiff provided health insurance coverage for the family. The family resided in their own home in Forest Hills, Queens, which carried a monthly mortgage of approximately $2,043, as stated in plaintiff’s statement of net worth, dated June 27, 2007. The children attended private schools earlier in the marriage, but began attending the local public schools a few years prior to the divorce. Defendant’s statement of net worth, dated June 27, 2007, indicates that in 2007 the parties borrowed $10,000 from defendant’s family members to pay for the two older children’s tuition. The children attended extracurricular activities. The two younger children attended a costly prestigious day camp during the summer. Although plaintiff’s employer paid for one of the parties’ automobiles, they did not lease or own luxury vehicles. The last few years of the marriage, the family traveled to Florida approximately three times, staying with plaintiff’s family on two occasions. Plaintiff’s statement of net worth, dated June 27, 2007, reveals that plaintiff had minimal debt, except the parties’ mortgage and home equity line of credit.
At commencement of the action in 2007, the parties continued to reside in the marital residence. In preliminary conference order/stipulation, dated November 2, 2007, the parties reached an agreement regarding the payment of most of the family/ household expenses. They agreed that some of the children’s expenses which were not covered by the preliminary conference order/stipulation would be subject to reallocation at trial or upon resolution. On September 9, 2008, the parties proceeded to inquest and agreed to joint legal and residential custody of the children and plaintiff agreed to pay to defendant the sum of $2,100 monthly as child support. They continued to reside together with their children until November 2008 when defendant vacated the marital residence. Plaintiff remained in the marital residence until it was sold. Plaintiff was responsible for the carrying charges and defendant was responsible for her rental apartment.
On January 26, 2009, the parties entered into a written so-ordered stipulation of settlement. Therein, plaintiff agreed to pay the sum of $2,300 monthly to defendant, as child support and 70% of the unreimbursed health expenses and day camp expenses. At the time of the stipulation, both continued to be similarly employed and agreed to an income cap for plaintiff in the sum of $110,000. They both continued to live near the chil *435 dren’s school. Their children had special needs and were attending therapy sessions to deal with their parents’ separation and divorce. Defendant received the sum of $112,000, representing her equitable share of the marital residence. Plaintiff continued to be responsible for the carrying charges for the marital residence until it was sold and his new mortgage with his current wife. Defendant continued to be responsible for her rental expenses.
After the stipulation sometime in August 2009, defendant gave birth to a son with her new husband. Defendant moved to a larger rental in Forest Hills, New York and continued to share a residence in Pennsylvania with her current husband. Defendant’s new husband assists her with the expenses on the Pennsylvania property and contributes $500 toward her rental in New York. He also gives gifts to the parties’ children by dining out with them, taking them on vacation and purchasing food.
As of June 2013, plaintiff has credit card debt in the sum of $40,000. Defendant has no credit card debt.
There is no evidence of the income and contribution by the respective new spouses.
Currently, the children still share equal time with each parent and attend public schools in the same school district. The parties’ two younger children are still engaged in extracurricular activities and attend the same day camp. The parties’ oldest daughter continues to suffer from anorexia, which is currently in remission. The middle child continues to have medical issues and regularly attends therapy. Plaintiff, through his employer, pays for the children’s cellular telephones and health insurance coverage. The costs of these expenses are unknown.
Defendant maintains that the court should apply the applicable child support percentage to the parties’ combined parental income, including the income which exceeds the statutory cap. Although defendant concedes that the children’s basic needs are met in her home, she argues that the children do not enjoy the same standard of living as they did during the marriage. Plaintiff argues that the agreed upon child support obligation of $2,300 monthly is reasonable to meet the children’s needs and the standard of living is the same for the children.
*436 Child Support Calculations Pursuant to the CSSA Year 2008
According to the parties’ tax returns for 2008, the parties’ gross incomes were $232,670 and $38,609, respectively. After deducting the sum of $18,879 from plaintiff’s income for self-employment tax, plaintiff’s adjusted gross income is calculated as $213,791. After deducting the sum of $2,394 for Social Security taxes, $560 for Medicare taxes and $1,052 for New York City locality taxes, defendant’s adjusted gross income is calculated as $34,603. Thus, the parties’ combined parental income is $248,394. The parties’ proportionate shares of the combined parental income are 86% and 14% respectively.
The applicable child support percentage is 29% as the parties had three unemancipated children in 2008. Applying the applicable child support percentage to the first $80,000 of the combined parental income results in a combined child support obligation in the sum of $23,200, of which $19,952 is attributable to plaintiff and $3,248 is attributable to defendant. Plaintiffs monthly child support would be $1,662.67.
The combined parental income which exceeds $80,000 is $168,394. Assuming arguendo that the court applied the applicable child support percentage of 29% to the excess income, the result is an additional combined obligation in the sum of $48,834.26, of which $41,997.46 is attributable to plaintiff and $6,836.79 is attributable to defendant. Thus, plaintiff’s basic child obligation would be $61,949.46 annually or $5,162.45 monthly. Plaintiff would also bear responsibility for 86% of the children’s unreimbursed medical expenses and reasonable child care expenses.
Year 2009
According to the parties’ tax returns for 2009, the parties’ gross incomes were $168,308 and $33,820, respectively. After deducting the sum of $17,716 from plaintiff’s income for self-employment tax, plaintiff’s adjusted gross income is calculated as $150,592. After deducting the sum of $2,068 for Social Security taxes, $484 for Medicare taxes and $832 for New York City locality taxes, defendant’s adjusted gross income is calculated as $30,436. Thus, the parties’ combined parental income is $181,028. The parties’ proportionate shares of the combined parental income are 83% and 17% respectively.
The applicable child support percentage is 29% as the parties had three unemancipated children in 2009. Applying the applicable child support percentage to the first $80,000 of the combined parental income results in a combined child support *437 obligation in the sum of $23,200, of which $19,256 is attributable to plaintiff and $3,944 is attributable to defendant. Plaintiff’s monthly child support would be $1,604.67.
The combined parental income which exceeds $80,000 is $101,028. Assuming arguendo, that the court applied the applicable child support percentage of 29% to the excess income, results in an additional combined obligation in the sum of $29,298.12, of which $24,317.44 is attributable to plaintiff and $4,980.68 is attributable to defendant. Thus, plaintiff’s basic child obligation would be $43,573.44 annually or $3,631.12 monthly. Plaintiff would also bear responsibility for 83% of the children’s unreimbursed medical expenses and reasonable child care expenses.
Year 2010
According to the parties’ tax returns for 2010, the parties’ gross incomes were $182,225 and $45,093, respectively. After deducting the sum of $18,123 from plaintiff’s income for self-employment tax, plaintiff’s adjusted gross income is calculated as $164,102. After deducting the sum of $1,297 for New York City locality taxes, Defendant’s adjusted gross income is calculated as $43,796.* Thus, the parties’ combined parental income is $207,898. The parties’ proportionate shares of the combined parental income are 79% and 21%, respectively.
The applicable child support percentage is 29% as the parties had three unemancipated children in 2010. Applying the applicable child support percentage to the first $130,000 of the combined parental income results in a combined child support obligation in the sum of $37,700, of which $29,783 is attributable to plaintiff and $7,917 is attributable to defendant. Plaintiffs monthly child support would be $2,481.91.
The combined parental income which exceeds $130,000 is $77,898. Assuming arguendo, that the court applied the applicable child support percentage of 29% to the excess income, results in an additional combined obligation in the sum of $22,590.42, of which $17,846.43 is attributable to plaintiff and $4,743.98 is attributable to defendant. Thus, plaintiff’s basic child obligation would be $47,629.43 annually or $3,969.12 monthly. Plaintiff would also bear responsibility for 79% of the children’s unreimbursed medical expenses and reasonable child care expenses.
*438 Year 2011
According to the parties’ tax returns for 2011, the parties’ gross incomes were $132,966 and $51,761.70, respectively. After deducting the sum of $14,668 from plaintiff’s income for self-employment tax, plaintiff’s adjusted gross income is calculated as $118,298. After deducting the sum of $2,139.17 for Social Security taxes, $738.52 for Medicare taxes and $1,499.12 for New York City locality taxes, defendant’s adjusted gross income is calculated as $47,384.89. Thus, the parties’ combined parental income is $165,682.89. The parties’ proportionate shares of the combined parental income are 71% and 29%, respectively.
The applicable child support percentage is 29% as the parties had three unemancipated children in 2010. Applying the applicable child support percentage to the first $130,000 of the combined parental income results in a combined child support obligation in the sum of $37,700, of which $26,767 is attributable to plaintiff and $10,933 is attributable to defendant. Plaintiffs monthly child support would be $2230.58.
The combined parental income which exceeds $130,000 is $35,682.89. Assuming arguendo, that the court applied the applicable child support percentage of 29% to the excess income, results in an additional combined obligation in the sum of $10,348.04, of which $7,347.11 is attributable to plaintiff and $3,000.93 is attributable to defendant. Thus, plaintiff’s basic child obligation would be $34,114.11 annually or $2,842.84 monthly. Plaintiff would also bear responsibility for 71% of the children’s unreimbursed medical expenses and reasonable child care expenses.
Year 2012
According to the parties’ tax returns for 2012, the parties’ gross incomes were $177,570 and $51,977.19, respectively. After deducting the sum of $16,199 from plaintiff’s income for self-employment tax, plaintiff’s adjusted gross income is calculated as $161,371. After deducting the sum of $2,183.24 for Social Security taxes, $753.68 for Medicare taxes and $613.27 for New York City locality taxes, defendant’s adjusted gross income is calculated as $48,427. Thus, the parties’ combined parental income is $209,798. The parties’ proportionate shares of the combined parental income are 77% and 23%, respectively.
The applicable child support percentage is 29% as the parties had three unemancipated children in 2010. Applying the applicable child support percentage to the first $136,000 of the *439 combined parental income results in a combined child support obligation in the sum of $39,440, of which $30,368.80 is attributable to plaintiff and $9,0721.20 is attributable to defendant. Plaintiff’s monthly child support would be $2,530.73
The combined parental income which exceeds $136,000 is $73,798. Assuming arguendo, that the court applied the applicable child support percentage of 29% to the excess income, results in an additional combined obligation in the sum of $21,401.42, of which $16,479.09 is attributable to plaintiff and $4,922.33 is attributable to defendant. Thus, plaintiff’s basic child obligation would be $46,847.89 annually or $3,903.99 monthly. Plaintiff would also bear responsibility for 77% of the children’s unreimbursed medical expenses and reasonable child care expenses.
Years 2013 and 2014
Although the trial commenced in 2013 and continued into 2014, neither party presented updated financial information for the years of 2013 and 2014, including W-2s and tax returns. Thus, the court shall determine the child support obligation based upon the parties’ financial documents from 2012.
Paragraph (f) Factors
Domestic Relations Law § 240 (1-b) (c) (3) provides that where the combined parental income exceeds $141,000, the court shall determine the amount of child support in excess of $141,000 through consideration of the factors set forth in Domestic Relations Law § 240 (1-b) (f) and lor the child support percentage (emphasis added). The Court of Appeals has held, “ ‘and/or’ should be read to afford courts the discretion to apply the ‘paragraph (f)’ factors, or to apply the statutory percentages, or to apply both in fixing the basic child support obligation on parental income over” $141,000 (Matter of Cassano v Cassano, 85 NY2d 649, 655 [1995]). In exercising its discretion, the court must articulate its reasoning. Such reasoning should reflect that the court has carefully considered the parties’ circumstances (id. at 655).
A review of the applicable case law of the Appellate Division, Second Department gives a glimpse of the struggle with the appropriate method to calculate child support in cases with excess parental income. In certain instances, courts have considered the enumerated paragraph (f) factors and applied the applicable percentage to a sum which exceeded the statutory cap but was less than the parties’ combined parental income (see Hymowitz v Hymowitz, 119 AD3d 736 [2d Dept *440 2014]; Beroza v Hendler, 109 AD3d 498 [2d Dept 2013]; Matter of Gartmond v Conway, 54 AD3d 952 [2d Dept 2008]). Alternatively, the courts have also applied the applicable child support percentage to the combined parental income (see Embury v Embury, 49 AD3d 802 [2d Dept 2008]). In high income cases where the combined parental income exceeds the statutory cap, the child support awarded “should be based on the child’s actual needs and the amount required for the child to live an appropriate lifestyle, rather than the wealth of the parties” (Levesque v Levesque, 73 AD3d 990, 990 [2d Dept 2010]). The test is “whether the child is receiving enough to meet his or her ‘actual needs and the amount required ... to live an appropriate lifestyle’ ” (Matter of Keith v Lawrence, 113 AD3d 615, 616 [2d Dept 2014]). The court’s decision to depart from the applicable prescribed percentage or to apply the prescribed percentage, must reflect a careful consideration for the stated basis for the exercise of discretion, the parties’ circumstances and the court’s reasoning for departing or applying the prescribed percentage (Matter of Pittman v Williams, 127 AD3d 755, 756 [2d Dept 2015]).
The court now turns to consider the enumerated factors, as set forth in Domestic Relations Law § 240 (1-b) (f). Plaintiff currently claims the children on his tax returns. Plaintiff, as the non-custodial parent, does not have any other children for whom he is providing support. Neither parent has any educational needs, as both parents have law degrees and defendant also has an additional graduate degree. It is undisputed that plaintiff’s income substantially exceeds defendant’s, both during the marriage, at the time of the stipulations and at the present time. However, it is also undisputed that defendant was aware of the excess income and agreed to a cap of $110,000 irrespective of the source of income. These facts have not changed.
The court now turns to the parties’ financial resources. While residing in the marital residence, the parties had minimal debt. Currently, defendant has no credit card debt and plaintiff has credit card debt. Both parties are remarried. The extent of financial contributions by their new spouses is unknown. Defendant’s husband testified he contributes to defendant’s rental expenses in New York. All three children have college funds, which are under plaintiff’s control, and are not in dispute. In the underlying matrimonial proceeding, both parties waived their rights to the other’s degree. Defendant waived her right *441 to plaintiff’s law practice. Neither party presented evidence regarding the values of these assets. Defendant received her equitable share of the marital residence.
The children are living the same lifestyle as they enjoyed during the marriage. Both parents maintain residences in close proximity to the former marital residence and their schools. The oldest daughter is now in college out-of-state. The children are still engaged in extracurricular activities. The parties’ children have some special needs and considerations and are in therapy to deal with their parents’ separation. The parties did not present evidence regarding any special aptitudes of the children. The parties traveled with the children during the marriage and that status continues separately with each parent.
Despite defendant’s claim that the children’s lifestyle has decreased, she acknowledged that the children’s needs were met during the marriage and concedes that the children’s needs are currently met in both households and there are no changes.
The court is also required to consider the non-monetary contributions that the parents will make toward the children’s care and well-being. In this matter, both parties make tremendous contributions to the children’s care and well-being. Due to the joint shared custody agreement, both parties are involved in decision making for the children as well as taking the children to medical and dental appointments and extracurricular activities. They are involved with the children’s educational pursuits and are engaged in the routine day-to-day care of the children. Plaintiff’s and defendant’s love, affection and concern for their children’s well-being were evident in their demeanor during trial. Neither has shown there is any breakdown of communication.
The court also considers the expenses incurred by the noncustodial parent in exercising visitations. Although the parties share joint legal and physical custody, plaintiff, the higher wage earner, is deemed the non-custodial parent for purposes of child support. Both parties are required to provide basic necessities of food, clothing and shelter for the children when the children are in their care. Defendant argues that the costs of housing, clothing and food for children during a custodial period do not qualify as an extraordinary expense to justify a deviation from the presumptive child support obligation. The Appellate Division, Third Department acknowledged that “there may be circumstances in which a deviation is warranted *442 in situations involving shared parenting time” (Matter of Ryan v Ryan, 110 AD3d 1176, 1181 [3d Dept 2013]). It is worthy of note that at the time of the execution of the so-ordered stipulation in January 2009 directing $2,300 monthly for child support, the parties were already living separately, the income of each was known, and they agreed to shared joint custody with each responsible for their individual expenses incurred during their custody time.
Finally, the court may consider any other factor the court deems relevant. A primary consideration in this case is the parties’ shared parental access schedule. Although defendant suggests that the Court of Appeals’ determination in Bast v Rossoff (91 NY2d 723 [1998]) prohibits the court from considering shared custody as a factor in child support, a review of the decision suggests otherwise. In Bast, the Court held that the CSSA is applicable to joint custody cases. In its holding, the Court continued that in shared custody cases, child support must first be calculated using the three-step formula set forth in the CSSA and there is no exception carved out in CSSA for shared custody cases. Significantly, the appellate court in Bass recognized, inter alia, that
“[t]here will certainly be shared custody cases where the statutory formula yields a result that is just and appropriate, notwithstanding the additional time spent with the child ... Of course, there will also be shared custody cases where the statutory formula yields a result that is unjust or inappropriate. In those cases, however, the court can resort to the ‘paragraph (f)’ factors and order payment of an amount that is just and appropriate” (Bast at 729).
Indeed, the Court noted, “[w]hile it reduces certain costs for the custodial parent, shared custody actually increases the total cost of supporting a child by necessitating duplication of certain household costs in each parent’s home” (id. at 730). While the Court of Appeals explicitly rejected use of a “proportional offset” formula in shared custody cases, its ruling simply directed courts to calculate child support in accordance with the CSSA. In this case, the parties share equal parenting time with the children and incur their separate expenses for the children’s basic necessities, including food, clothing, and toiletries.
Although plaintiff’s income exceeds defendant’s, the parties’ financial circumstances are one consideration of several fac *443 tors. Both parties are able to provide for the children’s needs and as evinced by the parties’ testimony, the children’s actual needs are being met. Restating the words of the Appellate Division, Second Department in Levesque, in high income cases, where the combined parental income exceeds the statutory cap, child support should be based upon the children’s actual needs and an appropriate lifestyle, not the wealth of one or both of the parties (Levesque at 990).
This court finds similarly. The grid below shows the calculated comparison for the relevant years:
[[Image here]]
Upon reviewing the applicable CSSA for the relevant years, the stipulation of the child support payment of $2,300 commencing 2008 is not unreasonable comparing the CSSA cap and the stipulated amount. Both parties agreed that the children are thriving and they are adequately taken care of as they were during the marriage. Except for the delineation of the CSSA calculation in the stipulation, there is no evidence to show that defendant was unaware of the income of plaintiff nor that the $2,300 per month was inappropriate to meet the children’s needs and lifestyle.
These parents have a strict equal custody arrangement as follows:
February to July
Plaintiff has the children from Sunday to Tuesday.
Defendant has the children from Tuesday to Friday.
They alternate weekends from Friday to Sunday.
August to January
It is the reverse and the alternate weekend continues.
The custody arrangement was not changed by the Appellate Division. Despite plaintiff being the payor parent, he has additional financial responsibility to care for the children in their joint custody arrangements, separately from his payment of *444 child support. In addition, plaintiff pays the oldest child’s college expenses. These parents engage in particular care in their joint decision making to meet every need for their children and both have adequate financial means to support their children.
There is no evidence presented to show, other than the stipulation not reciting the CSSA calculation, that defendant was induced to sign the stipulation without knowledge of the underlying income of plaintiff. In fact, the stipulation in 2009 was duly negotiated with counsels to reach the amount agreed to for child support. The child support in the sum of $2,300 continues to be paid and there is no showing that the children have been deprived of any need.
Upon consideration of the enumerated factors, the court finds that it would be unjust and inappropriate to apply the applicable child support percentage of 29% to the combined parental income, including the total income which exceeds the statutory cap.
A review of the parties’ incomes and their respective pro rata shares of the basic child support obligation for the years 2008 to 2014 show that the sum of $2,300 monthly exceeded plaintiff’s basic obligation up to the statutory cap for the years 2008, 2009 and 2011. Domestic Relations Law § 240 (1-b) (g) provides, “[w]here the court finds that the non-custodial parent’s pro rata share of the basic child support obligation is unjust or inappropriate, the court shall order the non-custodial parent to pay such amount of child support as the court finds just and appropriate.” In situations, where as here, the parties have litigated the issue of child support for a prolonged period of time and there are no issues of collusion and hidden incomes, it would be unjust and inappropriate to award child support in varied amounts, based upon the parties’ fluctuating incomes. Therefore, the court finds that it would be just and appropriate to award child support to defendant in the sum of $2,300 monthly, retroactive to September 9, 2008.
Child Support Arrears
Pursuant to the parties’ oral stipulation spread on the record on September 9, 2008, plaintiff agreed to pay the sum of $2,100 monthly, as child support to defendant. The parties continued to negotiate the ancillary issues of their divorce and on January 26, 2009, the parties entered into a so-ordered stipulation wherein plaintiff agreed to pay the sum of $2,300 monthly as child support. There is no evidence to establish that plaintiff failed to comply with the terms of the September 9, 2008 or January 26, 2009.
*445 Therefore, plaintiff’s child support obligation in the sum of $2,300.00 monthly, is retroactive to September 9, 2008. Defendant is owed arrears in the sum of $200 monthly from September 9, 2008 to January 26, 2009, for total arrears of $1,000.
Unreimbursed Medical Expenses
In accordance with Domestic Relations Law § 240 (1-b) (c) (5), the court determines that the parties’ are responsible for 71% and 29%, respectively, for the children’s unreimbursed health expenses, retroactive to September 9, 2008. The parties’ pro rata responsibilities are based upon the parties’ proportionate shares of the combined parental income. There is no claim by plaintiff for defendant’s contribution toward the cost of provided health insurance coverage for the children.
Reasonable Child Care Expenses
In accordance with Domestic Relations Law § 240 (1-b) (c) (4) the court determines that the parties’ are responsible for 71% and 29%, respectively, for the reasonable child care expenses incurred as a result of defendant’s employment. The parties’ pro rata responsibilities are based upon the parties’ proportionate share of the combined parental income.
Add-on Arrears
Both parties testified that they each paid expenses for the children and each seeks reimbursement. At trial, plaintiff presented spreadsheets detailing the children’s expenses which he paid, which he claims were prepared at the time the expenses were incurred. Other than the spreadsheet, neither party presented documentary evidence to support their claim for expenses incurred and paid on behalf of the children. Accordingly, the respective claim for unreimbursed expenses of the children is denied against both plaintiff and defendant.
Attorney’s Fees
Defendant seeks an award of counsel fees. Plaintiff opposes the application. The court notes that the Appellate Division, Second Department remitted this proceeding for a determination of the basic child support obligation, including the parties’ prorated contributions toward child care and unreimbursed health care expenses. The Appellate Division found that the parties’ remaining contentions were meritless. Therefore, the issue of counsel fees is not an issue before this court. Defendant’s claim for counsel fees is denied.

 Plaintiff’s exhibit 12 is defendant’s 2010 amended tax return. Said return included two W-2 summaries for defendant’s employment with the same nonprofit employer. The W-2s did not reflect sums paid for Social Security or Medicare taxes.